IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CA 05-431

IN RE:

WorldClass Processing, Inc.
    Debtor

WorldClass Processing, Inc.
    Plaintiff

v.

AT&T Capital Corporation
AT&T Commercial Finance Corporation
Newcourt Commercial Finance Corporation
CIT Corporation
    Defendants

Bankruptcy No. 98-29986-JKF
Chapter 11

Adversary No. 00-2672-JKF
Related to Dkt. No. 101, Memorandum
Opinion and Order of District Court

## MEMORANDUM OPINION[1]

This court issued a Memorandum Opinion and Order dated February 10, 2005, Adv. Dkt.

No. 91, denying a motion for summary judgment filed on behalf of Plaintiff-Debtor WorldClass

Processing, Inc. ("WorldClass"), and granting with prejudice Defendant CIT's[2] motion to

dismiss the amended complaint. *See In re WorldClass Processing, Inc.*, 323 B.R. 164

(Bankr.W.D.Pa. 2005). The parties' dispute arose out of events related to a loan transaction

_____

[1]This Memorandum Opinion constitutes our further explanation of our findings of fact and conclusions of law based on a remand from the District Court for the Western District of Pennsylvania, CA No. 05-0431, by Memorandum Opinion and Order dated November 21, 2005. *See* Adv. Dkt. No. 101.

[2]CIT Lending Services Corporation filed pleadings on behalf of the successor to AT&T Corporation and other defendants. CIT was formerly known as Newcourt Commercial Finance Corporation and AT&T Commercial Finance Corporation. *See* Defendant's Memorandum in Support of Its (1) Opposition to Plaintiff's Motion for . . . Summary Judgment . . . Adv. Dkt. No. 79, at 1.

1

involving WorldClass and CIT.  Our February 10, 2005, decision (1) dismissed claims based on

events occurring before and after November 7, 1995, based on a prior state court order and (2)

dismissed WorldClass's objection to CIT's proof of claim.  *See* Adv. No. 00-2672, Dkt. No. 6 at

Exhibit E, Findings of Fact, Conclusions of Law, and Decree Nisi filed on behalf of the

Honorable Joseph M. James, Court of Common Pleas, Allegheny County, Pennsylvania, Civil

Division No. G.D. 95-18718, dated April 21, 1998 (hereafter "Judge James' Opinion, Exh. E").

The District Court remanded on the basis that we did not (1) "explicitly identify the

standard of review or burdens applied to" the matter before us or (2) set forth elements or law

defining the causes of action or applicable preclusion principles.  We therefore address the

District Court's concerns.

In April of 2003, WorldClass filed a motion for summary judgment with respect to Count

VIII of its amended complaint.  Adv. Dkt. No. 73.  That count was an objection to CIT's proof of

claim and asserted that CIT's inaction and misrepresentation described in the other counts was

inequitable and so its indemnification claims were unenforceable, unreasonable and contrary to

agreements between CIT and WorldClass.  It further asserted that CIT's claims for postpetition

interest and indemnification were not sums certain and that amounts CIT had received under the

debtor-in-possession facility were not reflected in its claim.  A hearing was held on the motion

for summary judgment on July 11, 2003,[3] and this court issued its Memorandum Opinion and

---

[3] It appears that the transcript of this hearing was docketed twice, at Adv. Dkt. Nos. 89 and 90.

2

Order which is the subject of the remand from the District Court on February 10, 2005, Adv.

Dkt. No. 91.[4]

The standard the court applies is this: a motion for summary judgment shall be granted if

there is no genuine issue of material fact and the movant is entitled to judgment as a matter of

law when the facts are viewed in the light most favorable to the nonmoving party.[5]

Fed.R.Bankr.P. 7056, Fed.R.Civ.P. 56(c).  *See also Koenig v. Automatic Data Processing*, 2005

WL 2891740 * 4 (3d Cir., Nov. 3, 2005).  On a motion to dismiss, if matters outside the

pleadings are presented to and not excluded by the court, the matter is treated as motion for

summary judgment. *Brown v. Brock*, 169 Fed.Appx. 579, 581 (11th Cir. 2006).  In that instance,

parties have the opportunity to present material pertinent to the motion.  *Id.*  In this case, the

parties are relying on the proceedings in the Court of Common Pleas and had the opportunity to

present material. *See infra. Cf. Shenango, Inc. v. Apfel*, 307 F.3d 174, 185, n.6 (3d Cir. 2002),

*cert. denied sub nom. Shenango, Inc. v. Barnhart*, 539 U.S. 958 (2003)(when parties themselves

submit documents outside the pleadings, the appropriate standard of review is that for a motion

for summary judgment).

---

[4]In its reply brief with respect to the motion to dismiss, WorldClass asserts that at some
point this court made a finding that Judge James' opinion covered only the time period which
terminated with CIT's exercise of its warrants in 1995. If this court engaged in that discussion, it
was not included in our 2005 Memorandum Opinion. Thus, it is not a finding. Furthermore, the
transcript of the hearing held on May 7, 2002, Adv. Dkt. No. 64, establishes to the contrary. *See*
text, *infra*, at 17-18.

[5]In its opposition to WorldClass's motion for summary judgment and brief accompanying
same, CIT purported to assert a cross-motion for summary judgment. Adv. Dkt. Nos. 77, 79.
However, no separate motion was filed and a request for relief included in a brief or responsive
pleading is not permitted. Motions must be filed separately from responses, briefs, etc., in order
that proper notice is provided. *See* Local Rule 1001-2-H.

The parties do not dispute the material facts, rather the interpretation and legal effect thereof. Thus, the matter is ripe for summary adjudication. The motion for summary judgment asserted that CIT received more payments during the bankruptcy case than it was entitled to inasmuch as it was undersecured prepetition. Our prior opinion pointed out that, under the confirmed chapter 11 plan, CIT was to be paid in full and, although WorldClass asserted in its motion that CIT was undersecured on the petition date, all evidence was to the contrary. 323 B.R. at 168. The fact that CIT was not undersecured was the basis for the chapter 11 plan provisions providing for full payment of CIT's claims and for the Financing Order of February 11, 1999, entered in the main bankruptcy case at Docket No. 115,[6] both of which were proposed and prosecuted by WorldClass. WorldClass's assertion is contrary to its entire prosecution of the bankruptcy case and, at this late date, is both estopped and without evidentiary support. The plan as advocated by WorldClass is confirmed. It was accepted by the creditors of WorldClass and approved by this court. It provided for payment in full to CIT and that provision, a linchpin of the plan, was relied on by the creditors when considering whether or not to accept the plan. The plan confirmation order is final and binding. 11 U.S.C. §1141. The confirmation order is *res judicata*. *See, e.g., New Jersey Dept. of Treasury v. Visara Intern., Inc.*, 166 Fed. Appx. 639, 641 (3d Cir. 2006)(*res judicata* applied in the bankruptcy context means that a confirmed plan binds every entity that holds a claim or interest and precludes parties from raising claims or issues that could or should have been raised prior to confirmation); *In re Crown Vantage, Inc.*,

---

[6]WorldClass itself proposed the chapter 11 plan and filed the financing motions which provided that CIT would be paid in full and entitled CIT to assert a superpriority administrative claim with respect to any unpaid postpetition obligations. Under the plan, the liens of CIT [identified as "Newcourt" in the plan] were deemed to be valid and full payment was to be made. *See* Amended Plan, Dkt. No. 203; Order Confirming Amended Plan, Dkt. No. 420.

4

421 F.3d 963, 972 (9th Cir. 2005)(a confirmed "plan operates as a final judgment with *res judicata* effect"); 11 U.S.C. §1141 (regarding effect of confirmed chapter 11 plan). WorldClass cannot now change its strategy and advocate the exact opposite position from that which it successfully asserted in, and used to gain confirmation of, its confirmed plan. *See* note 12 and accompanying text, *infra*. *See also In re Battram*, 31 Fed. Appx. 488, 489 (9th Cir. 2002)("[a] confirmed plan 'is binding on all parties[,] and all questions that could have been raised pertaining to [it] are entitled to res judicata effect'")(citations omitted).

In our prior opinion we also noted that WorldClass, without ever having commenced an action under 11 U.S.C. §547, asserted a preference cause of action under that section in its motion for summary judgment which we rejected for various reasons that were stated in that opinion. *See* 323 B.R. at 170-71. In brief, Rule 7001 of the Federal Rules of Bankruptcy Procedure requires that a preference action, which is a request for affirmative relief with its own elements, be commenced by an adversary complaint. It cannot be raised and addressed in a motion for summary judgment or an objection to claim. Furthermore, the statutory language is clear that all elements under §547 must be proven in order for an avoidable preferential transfer to exist. 11 U.S.C. §547(b). One of those elements is that there was a transfer on or within 90 days prepetition enabling the creditor to receive more than it would if, *inter alia*, the case were a case under chapter 7 of the Bankruptcy Code. 11 U.S.C. §547(b)(5)(A). If there were no payments within the prepetition preference period, the statutory prerequisites for finding a preferential transfer cannot exist. The parties stipulated that in the 90 days prepetition CIT received no payments whatsoever from WorldClass. Stipulation dated January 2, 2003, Dkt. No. 71, at ¶6. Thus, §547(b)(5)(A) was not met.

5

WorldClass's contention that CIT was an insider by virtue of its ownership of WorldClass stock and therefore the year look-back provision of §547(b)(4)(B) (rather than the 90 day period applicable to noninsiders) applies is time barred inasmuch as no preference action was ever commenced and the time to do so has long expired. The argument that CIT was "in control of" WorldClass at all relevant times, in the sense of operating the Debtor or dictating operations, has been adjudicated against WorldClass in the state courts. It cannot be reasserted here. *See* discussion of the *Rooker-Feldman* doctrine, *infra* at 9-10. WorldClass's assertion is that CIT was not only WorldClass's senior lender, it also became the single largest shareholder when it exercised its warrants. This argument was the fundamental basis for WorldClass's position in the state court and in this court. However, the Court of Common Pleas specifically found that CIT was not in control, notwithstanding the exercise of the warrants, *Botsford, et al. v. Dugan, et al.*, GD 95-18718 (Ct.Cmn.Pleas, Allegheny Cty., Pa., April 21, 1998)(unpublished), its decision was affirmed on appeal, 758 A.2d 667 (Pa.Super. 2000), and the Pennsylvania Supreme Court denied review. 766 A.2d 1242 (Pa. 2001)(Table). *See* Exhibit E to Appendix in Support of Defendants' Motion to Withdraw the Reference, or to Have the Court Abstain, Adv. Dkt. No. 6. For the time periods after those covered by the state court's opinion, we found that WorldClass alleged no facts and provided no evidence to support its arguments regarding CIT's conduct. The allegations of control, breach of fiduciary duty, etc., in the amended complaint were all based on conduct considered by the state court and which the state court specifically found did not constitute the exercise of control.[7]

---

[7]In §101(2) of the Bankruptcy Code "affiliate" is defined as, *inter alia*, an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the
(continued...)

6

At a hearing on May 4, 2001, this court permitted WorldClass to file the amended

complaint but required WorldClass to allege acts of control that occurred after the period

encompassed within the state court's ruling.  *See* Adv. Dkt. No. 33, Transcript of May 4, 2001, at

24 ("I think you're going to have to amend the complaint . . .  So if you've got something

specific . . . it's going to have to be alleged . . . . if you have something that goes beyond these

exercises of the warrants . . . it should be stated.  If there's something postpetition . . . that should

be stated . . . .  the time frames do need to be stated . . . .  you have to show something else . .

---

[7](...continued)
outstanding voting securities of the debtor, other than an entity that holds such securities" in
certain capacities.  The mere fact that CIT may have been, by definition, an affiliate and,
therefore, an insider by virtue of §101(31)(E), does not establish the type of control which
WorldClass complains existed in this case.  Even if such control had existed within one year
prepetition, WorldClass did not allege any facts other than those considered by Judge James.
Therefore, even if the one-year reachback period applied, the issue of control still cannot be
established.  Further, WorldClass cannot now assert the one year reachback on any theory
because the statute of limitations has passed.  There was no complaint filed within the limitations
period for a preference action and WorldClass cannot now pursue this effort.  11 U.S.C. §546(a);
Fed.R.Bankr.P. 7001.
        WorldClass argues that Count VIII of its Amended Complaint was sufficient to state a
cause of action under §547.  *See* Plaintiff's Brief in Support of its Motion for Summary
Judgment as to Count VIII of the Amended Complaint . . ., Adv. Dkt. No. 74, at 8.  A reading of
that Count shows the contrary.  The Count is an objection to claim.  *See* text, *supra*, at 2-3.
Moreover, the Federal Rules of Bankruptcy Procedure require that an adversary be filed that is
specific to 11 U.S.C. §547.  *See, e.g. In re Sanglier*, 124 B.R. 511, 512, n. 2 (Bankr.E.D.Mich.
1991)(debtors' motion to avoid a lien as a preference would be denied without prejudice because
such a request must be brought in an adversary proceeding pursuant to Fed.R.Bankr.P. 7001).
*See also In re Indri*, 126 B.R. 443, 444 (Bankr.D.N.J. 1991)(actions for avoidance under §547
must be brought by adversary proceeding);  *In re Fitak*, 93 B.R. 589, 590 (Bankr.S.D.Ohio
1987)(court had previously ruled that an adversary proceeding must be commenced to exercise
avoidance powers under 11 U.S.C. §547).  *Cf. Matter of Hailes*, 77 F.3d 873, 874, n.1 (5th Cir.
1996)(rather than objecting to claim debtor should have "attempted to avoid the preferential
transfer . . . pursuant to 11 U.S.C. §547, as required by Bankruptcy Rule 7001").

.").[8]  *Id.* at 32-35.  Otherwise, WorldClass was faced with a judgment against it on the issue of control, which was adjudicated against its position, and it could not prove an element of its case. The amended complaint filed on July 7, 2001, Adv. Dkt. No. 36, did not comply with the court's directives.  A motion to dismiss the amended complaint was filed on August 2, 2001, Adv. Dkt. No. 41, and a hearing was held on September 28, 2001.  Apparently, the parties did not order a transcript as none appears on the docket of either the adversary or the main case.  Thus, the court has no official transcript to cite.  However, the recording of the hearing and this court's notes of the argument on the motion to dismiss, Adv. Dkt. No. 50, indicate that WorldClass continued to argue, as it had before Judge James and before this court prior to our 2005 Memorandum Opinion, that CIT interfered with WorldClass's business relationships with other creditors and that, because it had a pledge of stock and could control the board, it breached its fiduciary duty.

    As stated in our prior opinion and in this opinion, these were the same arguments advanced by WorldClass that failed in the state court.  Although, according to the District Court's remand opinion, the parties agreed that the state court decision rested on events occurring before November 7, 1995, we have again reviewed the record and find to the contrary. That is, the state court's findings and conclusions of April 1998 and a summary judgment order of October 1998[9] disposed of all causes of action raised by WorldClass in favor of AT&T.

_____

    [8]The parties disagree as to the time period encompassed by Judge James' ruling in the Court of Common Pleas.  We addressed that in our prior Memorandum Opinion and do so again *infra.*

    [9]At the September 2001 hearing, counsel for WorldClass initiated a discussion of whether the summary judgment order in the state court granted summary judgment for AT&T and the other defendants against all the state court plaintiffs because the order uses the singular word "plaintiff."  The appeal to the Superior Court makes it clear that, notwithstanding the wording of

(continued...)

Discovery ended in the state court matter in April 1998 and the state court's rulings in April and October of 1998 were based on what the parties presented at that time.

This court made clear at the September 2001 hearing that WorldClass had been given the opportunity months before to supplement the record with respect to events after April of 1998 that supported WorldClass's allegations of AT&T control and WorldClass alleged only events with respect to prior time periods. We stated at the September 2001 hearing that if the parties had a problem with Judge James' findings they should have raised it on the appeal in the state court system. This matter went all the way to the Pennsylvania Supreme Court (which denied review) and there has been nothing alleged before this bankruptcy court that was not alleged and addressed in the state court and by this court during the course of the bankruptcy. We further noted at the September 2001 hearing that Judge James' opinion expressly stated that it was addressing the situation as it existed as of that date in 1998 (April 21) and that *to that date* AT&T had not exercised control.

The proceedings in this court are an impermissible attempt to retry what was tried in the state court. There was lengthy discovery; there was a trial; there was post-trial discovery, a summary judgment motion and ruling, and an appeal to the state supreme court. The same allegations made there were repeated here. This court is required to give the same preclusive effect to a state court ruling that another court of the state would give. *Balthazar v. Atlantic City*

---

⁹(...continued)

the summary judgment order in the Court of Common Pleas, summary judgment was granted against all plaintiffs. WorldClass was one of the plaintiffs in the state court action. *See* Exhibit G, Opinion of the Superior Court of the Commonwealth of Pennsylvania dated July 19, 2000, Appendix in Support of Defendants' Motion to Withdraw the Reference, or to Have the Court Abstain, Adv. Dkt. No. 6 (repeated reference to "appellants" which per the caption of the Superior Court's opinion includes WorldClass).

9

*Medical Center*, 137 Fed.Appx. 482, 488, n.4 (3d Cir. 2005). *See also In re Knapper*, 407 F.3d

573, 580, n. 15 (3d Cir. 2005)(the *Rooker-Feldman* doctrine applies to cases brought by state

court losers). *See also Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284

(2005)(*Rooker-Feldman* doctrine is confined to cases brought by state court losers complaining

of injuries caused by state court judgments rendered before federal court proceedings

commenced and inviting federal review and rejection of the state court judgments). Nowhere in

pleadings or argument before this court did WorldClass allege conduct that occurred after the

exercise by CIT of the warrants ruled on by Judge James in 1998 - it alleged that there <u>was</u>

conduct but did not identify any conduct or circumstances other than what was encompassed in

Judge James' opinion and his ruling on summary judgment in October of 1998.[10]

      At the conclusion of the summary judgment hearing before this court we gave CIT the

opportunity to supplement the record with copies of the motion for summary judgment,

responses thereto, and briefs filed in the state court action that led to Judge James' 1998 ruling,

and permitted WorldClass to further supplement the record. On October 1, 2001, CIT filed

submissions pursuant to that invitation. Adv. Dkt. No. 49. Debtor WorldClass supplemented the

record on October 31, 2001. Adv. Dkt. No. 52.

      CIT's submission consists of its motion for summary judgment filed in the state court

after that court's issuance of findings in April of 1998, CIT's brief in support thereof, and the

response and brief filed by WorldClass and others. The motion for summary judgment filed in

state court states that WorldClass failed to prove that CIT was involved in WorldClass's day to

---

      [10]WorldClass also alleged that CIT breached an oral agreement to provide refinancing.
Judge James found no obligation on CIT's part to refinance.

day operations, that the state court had already so found and that, in light of the state court's

ruling, lender liability could not be established.  CIT further argued that WorldClass failed to

establish a fiduciary relationship between the two entities because WorldClass could not

establish the requisite control.  The state court held a trial and issued a final ruling in October of

1998.

WorldClass's supplemental submission to this court in October of 2001 consisted of an

additional brief and a transcript from October 29, 2001, of a hearing in state court in which

WorldClass asked Judge James to clarify his 1998 findings.  Judge James declined to interpret

his ruling, leaving it to this court to do so.  The brief sets forth argument with respect to the

interpretation of Judge James' ruling.  However, in reference to his invitation to WorldClass to

introduce additional discovery with respect to the motions for summary judgment that he decided

in October of 1998 (which was within the 90 day preference period) and the fact that nothing

additional was submitted by WorldClass, Judge James stated

> So nothing else was put in from the time of the spring of '98 when
> I made the findings until the motion for summary judgments [sic]
> were argued in October of '98 despite the fact that the Plaintiff
> [WorldClass and others] was invited to introduce the discovery.

Transcript of Proceedings of October 19, 2001, in the Court of Common Pleas of Allegheny

County, Pennsylvania, Civil Division, GD95-18718, at 17, Exhibit 1 to Plaintiff's Submission

Pursuant to Order Dated October 4, 2001, Adv. Dkt. No. 52.  In the matter before this

bankruptcy court WorldClass was permitted to amend its complaint to state facts with respect to

time periods it alleged were not covered by Judge James' order and it failed to do so.[11]

---

[11]Repeatedly WorldClass asserted that the sale price for its assets was insufficient.

(continued...)

11

WorldClass's brief contains the argument that CIT's alleged control of WorldClass and other alleged inequitable conduct established that CIT's claim was not valid.[12]  The Court of Appeals for the Third Circuit reviewed the issue of lender liability with respect to the "control" issue in different contexts in *Pearson v. Component Technology Corp.*, 247 F.3d 471 (3d Cir.), *cert. denied* 534 U.S. 950 (2001).  In *Pearson*, a WARN Act case, the court found most relevant those precedents in which third parties seek to impose liability on lenders on the theory that the degree of control exercised by the lenders was such that the borrowing corporation was "functionally being run by the lenders, or solely for the lenders' benefit, to the detriment of other creditors."  *Id.* at 491.  Such tests are akin to those used to determine whether the corporate veil should be pierced or whether an alter ego situation exists.  The court found that although the "total control" test as expressed by the Court of Appeals for the Fifth Circuit in *Krivo Indus. Supply Co. v. National Distillers & Chemical Corp.*, 483 F.2d 1098 (5th Cir. 1973), *rehearing denied* 490 F.2d 916 (5th Cir. 1974), was appropriate in many contexts, it was not when the issue

---

[11](...continued)
However, at the September 28 hearing, counsel for WorldClass itself stated that the asset sold for $18 million, although it was appraised at $21 million.  The assets were marketed for 1 ½ years, 200 bidders were solicited, and the sale price was still $18 million.  There has been no allegation of impropriety with respect to the sale process.  *Cf. BFP v. Resolution Trust Corp.*, 511 U.S. 531, 541, *rehearing denied* 512 U.S. 1247 (1994)(when a state's foreclosure procedures are followed, "mere inadequacy of the foreclosure sale price is no basis for setting the sale aside").

[12]*See, e.g.*, Plaintiff's Brief in Reply to Defendant's Memorandum in Support of its (1) Opposition to Plaintiff's Motion for . . . Summary Judgment as to Count VIII, Adv. Dkt. No. 83, at 2, wherein WorldClass asserts that because CIT was undersecured, was paid its allowed secured claim, and was an insider of WorldClass on the petition date, WorldClass is entitled to recoup amounts paid on account of the prepetition debt in the one year prepetition.  WorldClass argues that the point is whether CIT was paid more on account of the prepetition debt than the value of the prepetition collateral.  The plan, Intercreditor Agreement, and a stipulation entered into between the parties belie this assertion.

involved the WARN Act. What is pending in the case at bar is not a WARN Act matter. Thus, it appears that the Court of Appeals for the Third Circuit, like that for the Fifth Circuit, expects the "total control" standard to apply. Even if that test does not apply, no facts are asserted in support of the alleged control that have not already been subject to adjudication. Essentially, the control inquiry is whether the corporation is "little more than a legal fiction." *Trustees of Nat. Elevator Industry Pension, Health Benefit and Educational Funds v. Lutyk*, 332 F.3d 188, 194 (3d Cir. 2003). Fundamental unfairness must be shown to exist. *Id.* Neither total control nor the "legal fiction" exists in this case and the confirmed plan, binding on Debtor and its creditors and equity holders, governs.

*Krivo* was a case in which creditors of a reorganized debtor brought an action against the debtor's major creditor alleging domination by the creditor to the extent that the debtor was a mere instrumentality of the creditor. The Court of Appeals for the Fifth Circuit in *Krivo* noted that stock ownership is insufficient to demonstrate control. The existence of a debtor-creditor relationship is also not a basis, in and of itself, to find control. There must be "actual, participatory, total control of the debtor." 483 F.2d at 1105. There must be a showing of no separate independent corporate existence and the subservient corporation must be shown to have been used to further the purposes of the controlling corporation. *Id.* In addition, fraud or injustice must be shown proximately to result from misuse of control. *Id.* at 1106. WorldClass has alleged, in essence, only that through CIT's ability, in 1995 and 1996 (and apparently thereafter), to appoint some board members and its refusal to support certain members of the board in a desire to begin a new project which would require CIT to participate in a refinancing plan, CIT controlled WorldClass to WorldClass's detriment. This is the same conduct found by

13

the state court to be insufficient to establish liability by CIT.  WorldClass alleged no new facts

with respect to the one year prepetition or thereafter.

*In re KDI Holdings, Inc.*, 277 B.R. 493 (Bankr.S.D.N.Y. 1999), stated the following:

> Lender liability is established by application of the instrumentality
> doctrine, which requires:  (1) Control, not mere majority or
> complete stock control, but complete domination, not only of
> finances, but of policy and business practice in respect to the
> transaction attacked so that the corporate entity as to this
> transaction had at the time no separate mind, will or existence of
> its own; and (2) Such control must have been used by the
> defendant to commit fraud or worse, to perpetrate the violation of a
> statutory or other positive legal duty, or a dishonest and unjust act
> in contravention of plaintiff's legal rights; and (3) The aforesaid
> control and breach of duty must proximately cause the injury or
> unjust loss complained of.  *Fisser v. International Bank*, 282 F.2d
> 231, 238 (2d Cir.1960) (citing *Lowendahl v. Baltimore & Ohio
> R.R. Co.*, 247 A.D. 144, 287 N.Y.S. 62, 76, *aff'd.*,272 N.Y. 360, 6
> N.E.2d 56 (1936)).  To establish lender liability through the use of
> the instrumentality doctrine in the context of a creditor-debtor
> relationship, "courts require a strong showing that the creditor
> assumed actual, participatory and total control of the debtor.
> Merely taking an active part in the management of the debtor
> corporation does not automatically constitute control . . . . " *Krivo
> Industrial Supply Co. v. National Distillers and Chem. Corp.*, 483
> F.2d 1098, 1105 (5th Cir.1973), *reh'g denied,*490 F.2d 916 (5th
> Cir.1974).  *See also National Westminster Bank USA v. Century
> Healthcare Corp.*, 885 F.Supp. 601, 603 (S.D.N.Y.1995)(quoting
> *Krivo*).  Moreover,
>
> > [l]ender liability is predicated on an unmistakable
> > showing that the subservient corporation in reality
> > has no separate, independent existence of its own
> > and was being used to further the purposes of the
> > dominant corporation. Suggestions by a major
> > lender for a defaulted debtor, even when coupled
> > with a threat of the exercise of its legal rights if the
> > debtor does not comply, are both commonplace and
> > completely proper. *National Westminster [Banks
> > USA v. Century Healthcare Corp.]*, 885 F.Supp.
> > [601] at 603 [S.D.N.Y. 1995].

14

*KDI Holdings, supra,* 277 B.R. at 515-16.  Nothing that WorldClass has proffered has met even

a lesser version of this control test.  Further, via, at the very least, the postpetition Financing

Motion and Order and its confirmed plan, WorldClass agreed to and advocated the very

circumstances it now disputes.

In its opinion of April 21, 1998, in the matter of *Botsford, et al. v. Dugan, et al.,* G.D. 95-

18718 (Allegheny County Court of Common Pleas), with respect to the exercise of the warrants

and CIT's control, the state court found that (1) the warrants were properly exercised, (2) CIT

had business justification for exercising its warrants, (3) under the parties' contract, changes in

focus or additional indebtedness of WorldClass Processing was subject to CIT's approval, which

was not forthcoming with respect to a particular project and (4) CIT declined to become a lender

in that particular project.  The court further found that the issuance of stock to CIT pursuant to

the warrants was a contractual obligation approved by the company's officers, directors and

shareholders as a condition of the initial loan by CIT and that it was "not a 'transaction in

control.'"  *Id.* at 28.  The court found that ousted directors Matthew W. Botsford, Jr., and

Edward Neese, plaintiffs individually and as shareholders/directors on behalf of WorldClass, had

breached their fiduciary duty to WorldClass.  *See* Exhibit E, Appendix in Support of Defendants'

Motion to Withdraw the Reference or to Have the Court Abstain, Adv. Dkt. No. 6 (hereafter

"Appendix, Dkt. No. 6 at ___).  CIT was found not to be responsible for WorldClass's financial

problems.  These findings were made after at least 13 days of trial.  *See Botsford, et al. v. CIT*

*Capital Corp., et al.,* Civ. A. No. 97-2049, Appendix, Dkt. No. 6 at Exhibit J, at 6.

Further, in an action filed in the District Court for the Western District of Pennsylvania,

Civ. A. No. 97-2049, *id.* at Exhibit J, Botsford and Neese, individually and as shareholders on

15

behalf of WorldClass, and WorldClass itself made the same accusations of usurpation of control. This action was filed while the state court action was pending. The district court found that *Colorado River* abstention was not appropriate inasmuch as the action included additional defendants and as a result of a motion to intervene an additional plaintiff would be added as well as additional federal causes of action. The district court further noted that, notwithstanding the foregoing, principles of collateral estoppel might bar relitigation of factual findings if the standards used in state court were the same as those used in federal court. On the issue of control, the standards are identical and WorldClass failed to meet its burden by even preponderate evidence. The district court case was closed in April of 2004 based on a stay issued by the district court in light of the pendency of the bankruptcy case. We addressed the issues in our prior Memorandum Opinion. Everything alleged by WorldClass in support of its amended complaint was based on and resulted from the same conduct that the state court found did not constitute control. Nothing was presented to this court in the amended complaint that was not based on events and conduct previously ruled on by the state court. Thus, having had multiple opportunities to supplement the record and having failed to supply any new information on any of those opportunities, WorldClass's arguments ring hollow.

With respect to the pending motion to dismiss the amended complaint, the standard the court must use is to accept "all facts of the pleadings and reasonable inferences to be drawn therefrom . . . as true." *In re Tower Air, Inc.*, 416 F.3d 229, 235 (3d Cir. 2005). However, absent specific facts, the allegations are not accepted as true. *Id.* The only "specifics" alleged in the amended complaint hark back to the time period covered by the state court's ruling and were addressed in our 2005 Memorandum Opinion.

16

In its amended complaint WorldClass argues that in 1996, years before WorldClass filed bankruptcy, CIT prevented it from accepting an offer of financing from Citicorp Venture Capital and that such financing would have benefitted WorldClass by reducing the amount owed under its credit facility.  We have reviewed the record, including the state court's opinion of April 21, 1998, and our prior opinion of February 10, 2005.  We conclude that Judge James' ruling applied to events up to and including the date of his April 21, 1998, opinion.  At the hearing before the undersigned on the motion to dismiss held on May 4, 2001, counsel for CIT pointed out that Judge James found that the recapitalization plan presented to WorldClass's board in January of 1996 had not been approved by CIT as of April, 1998.  Adv. No. 00-2672, Dkt. No. 6,  Judge James' Opinion, Exh. E, at ¶ 5. In his opinion, Judge James referred to the January 1996 adoption of resolutions by WorldClass's board that authorized WorldClass officers to "evaluate and if appropriate pursue a recapitalization plan for WCP." *Id.* at ¶ 105.  The resolutions called for restructuring the CIT loan, among other things.  *Id.* at ¶ 109.  That plan had not been adopted or approved by CIT as of the time of Judge James' opinion and he found that there was no requirement that CIT, as the senior lender, give approval to the refinancing plan or agree to restructure its loan.  *Id.* at ¶ 110.[13]  The court held that resolutions by the board with respect to alternative forms of refinancing which were not acted upon did not constitute evidence of self-dealing.  *Id.* at ¶ 5.

---

[13]In the amended complaint Debtor WorldClass argued that CIT prevented WorldClass from accepting an offer of financing from Citicorp Venture Capital and that such financing would have benefitted the Debtor by reducing amounts owed by Debtor.  This is alleged to have occurred in 1997 which is within the time period considered and ruled on by Judge James.

At a hearing before this court held on May 7, 2002, we noted that Judge James' findings covered a period extending at least through February 29, 1996. Transcript of May 7, 2002, Adv. Dkt. No. 64, at 12. This court also examined Judge James' 1998 finding that CIT never approved the loan with respect to which WorldClass's board had passed resolutions in 1996 and concluded that that finding was "true as of the date of his opinion [April 21, 1998], and in fact was still true as of the date of the sale of assets here in this Court [June 2, 2002]." *Id.* at 11.[14] *See* Order . . . Granting . . . Motion to Sell Real and Personal Property of the Estate . . . , Dkt. No. 419. *See also* Transcript of May 7, 2002, Adv. Dkt. No. 64, at 15.

Even if Judge James' ruling did not extend beyond the exercise of warrants by CIT, it is clear to this court that the allegations with respect to the later time period are exactly the same, and cover the identical time period, as those considered by Judge James. *See* Amended Complaint, Adv. No. 00-2672, Dkt. No. 36, and Supplemental Submissions at Dkt. Nos. 49, 52. With respect to the time periods after those considered by Judge James, which, as stated *supra*, culminated with the October 1998 ruling, this court's rulings on the record on May 7, 2002, govern, as does our 2005 Memorandum Opinion. Further, WorldClass did not allege specifics of any improper conduct after the date of Judge James' opinion; bald allegations of improper conduct are insufficient to state a cause of action. We gave WorldClass ample opportunity (the

---

[14]The plan of reorganization was confirmed the same day the sale order was entered. Dkt. No. 420. The confirmation order was appealed but the appeal was withdrawn, and an order approving the withdrawal was entered. *See* Dkt. Nos. 434, 507, 541, 542. Furthermore, an appeal of the order confirming the sale was filed but withdrawn and an order was entered approving that withdrawal. *See* Dkt. Nos. 430, 438, 482, 488. We note that WorldClass, which was the proponent of the sale and plan, did not file the appeals. Rather, the appeals were filed by Edward Neese and Matthew Botsford, former directors, who Judge James found had breached their fiduciary duty to WorldClass. Judge James' Opinion, Appendix, Exh. E, at 29.

amended complaint, supplements to the record, various hearings) to state allegations that were specific to the later time and it failed to do so.

The confirmed chapter 11 plan was the product of negotiation among, *inter alia*, Debtor (WorldClass), CIT, and the creditors' committee. The plan was proposed, advocated, and prosecuted by WorldClass and provided that CIT was to be paid its entire claim, without reservation. Under the confirmed and binding chapter 11 plan and the Intercreditor Agreement, CIT is to be paid in full first and, if funds remain thereafter, they are to be paid to the post-confirmation successor to WorldClass, WCP LLC. The parties agreed that CIT did not receive distributions of an amount sufficient to pay even the undisputed portion of its claim. Thus, WorldClass also failed to establish that CIT received improper payments. Inasmuch as CIT has not been paid the undisputed portion of its claim, WorldClass's argument that CIT was overpaid is also without merit.

In addition, WorldClass and CIT entered into a Stipulation dated January 2, 2003, Adv. Dkt. No. 71, which stated, in pertinent part:

> 1. To secure payment of the Obligations [under the 1993 Credit Agreement] the Debtor [WorldClass] granted to CIT a first priority security interest in, and lien on , substantially all of its assets, both real and personal (the "Prepetition Collateral") . . . .
>
> 3. As of the Petition Date [December 18, 1998], the Obligations exceeded $21 million (the "Prepetition Indebtedness"), comprised of $17,479,283 in principal, $863,152 in accrued but unpaid interest, at least $900,000 in indemnity claims asserted by CIT . . ., and at least $1.9 million that CIT asserted arose under warrants held by it . . . .
>
> 4. At all relevant times after December 17, 1993[,] and until and including the Petition Date, CIT maintained its first perfected priority security interest in, and lien on, the Prepetition Collateral.

19

5. As of December 18, 1997[,] (that is, one year prior to the Petition Date), the Debtor owed CIT the sum of $18,645,339 under the Credit Agreement, exclusive of the Asserted Indemnity Claims and the Asserted Warrant Claims.

6. In the year preceding the Petition Date (that is, from December 18,m 1997[,] through the Petition Date, the Debtor remitted to CIT . . . the sum of $2,187,274 . . . . CIT avers that all such payments were remitted from proceeds of PrePetition [sic] Collateral in which CIT has a first priority security interest . . . . In the 90 days preceding the Petition Date, CIT received no payments on account of the Obligations.

7. On February 11, 1999, the Court entered its "Final Order Approving Section 364 Borrowing and Granting Liens" (the "Financing Order") [authorizing] Debtor and CIT to enter into certain postpetition loan transactions . . . .

8. CIT loaned the Debtor a total of $12,748,000 under the Financing Order (the "Postpetition Indebtedness").

9. Subsequent to the entry of the Financing Order, CIT received a total of $32,902,285.06 from the Debtor . . . . The Postpetition Remittances were generated from the collection of the Debtor's receivables in the ordinary course of business, the sale of the Debtor's assets under . . . section 363 . . . . The Debtor's assets, exclusive of a limited amount of . . . assets, were sold in June, 2002[,] for . . . approximately $18,207,348.00.

10. Out of the Postpetition Remittances, CIT applied $21,096,724 to the Prepetition Indebtedness. Of that . . . CIT applied $18,342,796 to principal and interest accrued but unpaid as of the Petition Date and $2,753,928 was applied to interest accrued after the Petition Date through June 30, 2000. As a result . . . the Debtor paid all of the Prepetition Indebtedness with the exception of the Asserted Indemnity Claims and the Asserted Warrant Claims.

11. CIT also applied $11,805,561 of the Postpetition Remittances to reduce the Postpetition Indebtedness. Of that . . CIT applied $11,192,611 to principal and $612,950 to interest that had accrued through June 30, 2002.

> 12.  As of January 31, 2002, $1,944,835.95 of Postpetition
> Indebtedness comprised of $1,555,389 in principal and
> $389,447.21 in accrued but unpaid interest is claimed to be due
> and owing from the Debtor to CIT . . . . CIT claims further their
> [sic] remains due PostPetition [sic] Indebtedness consisting of
> reimbursement claims for attorneys fees and expenses incurred by
> CIT after the Petition Date and claims for interest accruing after
> January 31, 2002.

CIT notes in its Memorandum in Support of its (I) Opposition to Plaintiff's Motion for . . .

Summary Judgment . . ., Adv. Dkt. No. 79, at 3, n.1 (hereafter "CIT's Opposition, Adv. Dkt. 79,

at __"), that the Indemnity Claim arises pursuant to Section 8.07 of the Credit Agreement and at

least two letter agreements.  Section 2.05 of the Credit Agreement, read with the Credit

Agreement definitions, provides that after a default (which occurred prepetition), interest

accrued at 13.25 percent per year and the parties agreed on the amount in ¶ 10 of the Stipulation,

*supra*.  The confirmed plan and the Intercreditor Agreement[15] entitle CIT to the postpetition

interest.  *See* Adv. Dkt. No. 79 at 4.  Further, CIT holds separate claims arising from the

postpetition financing order.  *See* Stipulation, *supra*, Adv. Dkt. No. 71,  at ¶ 8.  The Financing

Order itself gave CIT a valid, perfected, enforceable first priority security interest in and lien on

all property of WorldClass and its bankruptcy estate, including certain causes of action, with

respect to new loan advances.  *See* Financing Order, Dkt. No. 115.  The Financing Order also

granted CIT, as adequate protection with respect to its prepetition claims, a security interest in all

WorldClass's and the estate's property, then existing or thereafter acquired.  Further, the

Financing Order, which has been a final, binding order since February of 1999, governs the

application of payments by WorldClass to CIT and directs that payments be applied first to

---

[15]The Intercreditor Agreement was incorporated in the plan.

21

prepetition debt whether arising or accruing before, on, or after the petition date, and that CIT is not required to return any payments improperly received or applied as long as it is owed anything.[16] WorldClass stipulated to the amount paid to CIT postpetition, Stipulation at ¶ 9, and that the funds were generated from collection of receivables. *Id.* The receivables were CIT's collateral. *See* Stipulation at ¶¶ 1, 4.[17]

CIT's position and our conclusion in our prior Memorandum Opinion are further supported by the terms of the plan that was confirmed in this case. For instance, the confirmed plan provides that all of CIT's rights with respect to the Financing Order and its prepetition Credit Agreement and other agreements remain in effect. *See* Amended Chapter 11 Plan Dated 7/12/99, Dkt. No. 203, at art. IV.A.1. The plan further provides that CIT is to be paid before any payments are made to Debtor WorldClass, Plan art. IV.A.1.5,[18] and that CIT and Debtor are to be paid in full before there is any distribution to equity holders. Plan art. IV.A.7-8.

A copy of this Memorandum Opinion on Remand will be transmitted to the Honorable Donetta W. Ambrose, Chief U.S. District Judge, District Court for the Western District of Pennsylvania.

DATE: July 13, 2006

*Judith K. Fitzgerald*
Judith K. Fitzgerald                                                    jmd

---

[16]The Financing Order further provides that CIT may exercise its discretion to reverse any application of payments to reapply the funds to other amounts it is owed.

[17]CIT provided a calculation to support the fact that it has not been paid in full. *See* CIT's Opposition, Adv. Dkt. 79, at 6-7. WorldClass provided nothing to the contrary.

[18]$500,000 of the amount was subordinated to a payment that was to be made to WCP LLC. WCP LLC is a Class 5 creditor under the plan. CIT is Class 1.

United States Bankruptcy Judge

cc:     The Honorable Donetta W. Ambrose

        Robert O Lampl
        960 Penn Avenue, Suite 1200
        Pittsburgh, PA  15222

        Bryan Krakauer
        Sidley Austin Brown & Wood
        Bank One Plaza
        Chicago, IL  60603

        George E. Yokitis
        436 Seventh Avenue, 30th Floor
        Pittsburgh, PA  15219

        U.S. Trustee

Dated: 7/13/2006
15:29:10                                                23